Good morning, Your Honors. I'm Eileen Dennis Gilbride from Phoenix, Arizona, for the defendant Capps and the county of Apache County. My colleague who wrote the brief, Mr. Warner, is otherwise detained on the civil bench now, so I'm here to argue. All right. I'd like to first deal with the course and scope issue. We argued that you cannot possibly fire someone outside the course and scope of an employment. This argument goes to what? Error at the trial? It goes to the failure of the plaintiff to file a notice of claim and therefore the case should not have. No, no, no. But the challenge is one claim went to trial, right? Yes, the claim against Ms. Capps went to trial and should not have because. When I say one claim, I mean the. The intentional. State law claim. They're also. The intentional. Intentional interference with contract. Correct. That's a claim you're addressing about this business, about the scope of employment. That's correct. All right. I just want to. That's correct. Identify what you're what you're. Go ahead. Yes. Judge Broomfield denied our summary judgment motion, but in doing so, he mixed up the course and scope issue with the intentional interference issue. He said that if he if she was acting out of personal animosity only, then she could have been outside the course and scope of her employment. Plaintiff makes a similar error in he argued to the jury that Ms. Capps could only be in the course and scope of her employment if she had terminated plaintiff for good cause. That's wrong, too. You can terminate someone for bad cause and still be in the course and scope. You might subject yourself and your employer to liability if you do that. But whether or not the termination was wrongful does not affect whether the termination was in the course and scope. If that were so. What case are you depending on primarily? Is there a case you depend on primarily for that? Dube versus Desai is is the case that we cited in our supplemental citation of authority. And that is the Arizona probably decided after trial. Well, yes, but it explains what it explains, what the course and scope law is in Arizona. Well, it's one view, at least. Well, it is the most recent view of our court of appeals, Your Honor. I know, but it's not the view that, you know, necessarily the Supreme Court is what I'm saying. The Supreme Court hasn't addressed the issue respectfully. Go ahead. If the trial judge and if the plaintiff were correct in that the supervisor's motive, personal motive, could affect the course and scope issue, then the effect would be that the plaintiff could get around the notice of claim issue and the employer could get around vicarious liability. Let me ask another sort of preliminary question now. So your argument is not that the instruction to the jury was wrong on scope of employment. No, that's correct. The court the the trial judge erroneously sent the let the case go to the jury at all. And so you're not arguing about the instructions. You're saying he should have granted your motion to dismiss, in effect. That is out of law because of the failure to file a claim. Correct. We filed summary judgment. This says, in a sense, this argument has nothing to do with what happened at the trial. That's correct. It should have gone to the jury at all. The course and scope. Right. It should not have gone to the jury at all. Right. Because if the plaintiff had been correct and if the trial judge were correct in sending the case to the jury, what it means is that the employer can get out of vicarious liability by claiming that the supervisor was acting with personal motive. And the plaintiff could get around the notice of claim requirement by alleging that the supervisor was acting with personal motive. That is not what the course and scope analysis is. The analysis under Doob versus Desai, which is the most current Arizona pronouncement on course and scope, is this. It's at paragraph 11, and I'm quoting, an employee's actions are deemed motivated to serve the employer if they are incidental to the employee's legitimate work activity. Did you say paragraph 11? Paragraph 11, Doob versus Desai. Yes. An employee's actions are deemed motivated to serve the employer if they are incidental to the employee's legitimate work activity. It doesn't have to do with the personal animosity of the supervisor. It has to do with whether or not the employee's activity in terminating in this case was incidental to her work activity. And in Doob, for example, it was as a matter of law in the course and scope, even though the professor in that case had personal animosity for the student. Because what he did in sending his memos and accusing the student of plagiarism was at least incidental to his employment, and therefore motivated in part by a desire to serve his employer. That's exactly what we have here. It's undisputed that Ms. Kapp's job duties were to run her office and to discipline her employees. No one disputes exactly what she did, so there is no fact question on course and scope. We know exactly what she did. She terminated her employee. The question is whether that act was at least incidental to her legitimate work activities. They had to have been. Because that was her job, was to run her office. Now, let me distinguish the Shallick case, which plaintiff relies on, and the Crum case. Shallick is very important, and I would like you to look specifically at the paragraph starting with Head Note 5. Shallick was a case of sexual harassment. And the key in Shallick, the reason why. Just a minute. Starting at what? The paragraph that starts with Head Note 5. Okay, go ahead. Head Note 5. It says, and I'll quote here, Many factors are to be considered in determining whether conduct not expressly authorized is so incidental as to be within the course and scope. So what it's saying is when you have cases like Shallick and Crum, where the conduct is not authorized by the employer, no one ever authorizes someone to sexually harass an employee. And no one ever authorized someone to defame someone else. When you have actions that are not authorized, then you go into the factors. And those tend to be what we would consider private actions, in effect. They can be. That's correct. And to see if we're going to bring it within the course and scope to vicariously, to make the employer vicariously liable, then you look at all the factors to see if the conduct at issue was at least incidental to the employment. Here, we don't have unauthorized activity. We have authorized activity, which is the discipline of the employer's employee to terminate. Well, now, you've completely ignored Wagon Seller, right? Wagon Seller is not a course and scope case. There was no issue at all of course and scope. It addressed the concept of intentional interference. And it distinguished are we going to use the concept of privilege when we talk about intentional interference or are we going to use the concept of improper conduct. So that whole section of Wagon Seller, where it talks about privilege, isn't saying that we can never find supervisors outside the course and scope as a matter of law or in the course and scope as a matter of law. It's simply distinguishing the concept of privilege from the concept of improper action. And it says we're not going to go with privilege. We're going to go with the improper action concept. It is not a course and scope case at all. There was no issue of course and scope. There was no issue of notice of claim. It is important only in the intentional interference context, and I'm going to get to that issue next. But unless... So other than Schalich, excuse me, Schalich and Crum. Dube versus Desai. In the newer case, are there any other scope and or course and scope cases that we should look at? Crum is the only other one that speaks to the issue. Crum, Schalich, and Dube and Desai. Crum and Schalich were unauthorized. But Crum is a case that was, well, I guess it's what you wanted, decided on the plea, wasn't it? Crum said there was an issue of fact on whether the conduct was course and scope because the conduct at issue was defamation, which is never authorized by an employer. So the question is are we going to bring that unauthorized conduct within the employer's vicarious liability by seeing if it was at least incidental? Here we don't even have to worry or question about whether termination was at least incidental to Ms. Capp's employment. It was her job. Counsel? Yes, sir. Counsel, I have a question. Could you please address the pros and cons of certifying a state law question to the state Supreme Court? That's certainly an option, Your Honor, if you're entitled to rule against. If you're inclined to rule against, certify it. If you're inclined to go with me, it's not necessary. But it hasn't been. That's an honest answer. And that is the truth. It can be, or you can decide it here. I think the law is clear after Dube v. Desai what the issue is. The issue is incidental to employment, especially when you look at the effect of doing what the lower court did and what the plaintiff wants to do, and that is to allow the plaintiff to get around the notice of claim requirement by simply alleging bad motive, which would also allow the employer to get around vicarious liability by claiming the supervisor had a bad motive. If that were the case, employers would never be liable for wrongful termination. What did Judge Broomfield depend upon in ruling against you on that issue? Judge Broomfield just said it was a course-in-scope factual issue. He depended on some Arizona case, didn't he? He was looking at Crum. Crum. And Shalek, I believe. And you've already gone through why you think those are distinguishable. Yes, sir. Because those are the cases that were not authorized. Of course, Dube wasn't yet decided when he made that ruling, right? Right. But it's not a change of law, Your Honor. It's just simply a clarification of what the course-in-scope, what the intent, what the motivation element of course-in-scope is. It's not the supervisor's personal motivation. It's whether or not the activity was motivated in part to serve the employer. And by motivation, we're not talking about personal animosity. We're talking about incidental to their. Now, let me ask this question now. Course-in-scope was an issue that was submitted to the jury. It was. Is that the same question as the course-in-scope question on whether you have to file a claim? In your view, is it a different question? That was what that instruction went to, is whether or not, if she was in the course-in-scope, the case is over because no notice of claims filed. All right. Now, so that instruction was the correct instruction, right? It followed the language of Shalek. All right. So my question is, is it your position that so the jury obviously decided the factual question against you? There wasn't a factual- Assuming there's a factual question. Correct. So then your position is it must be that that portion of the verdict lacks evidentiary support. Is that right? We don't even get to that issue. Well, sure, because aren't you challenging that resolution of that issue? Yes. Well, we're challenging the summary judgment and the denial of our Rule 50 motion on that issue. It's an issue of law. What I'm getting at is this. You know, there's this case law that says, well, if you raise a question at summary judgment and you lose and that same question is decided at trial, we don't even decide the summary judgment motion because, you know, we decide whether there was error at the trial because it's the same question. That only applies, Your Honor, if the summary judgment was denied for a factual question. This summary judgment was denied on a legal error. Because the trial judge says basically, kind of paraphrasing what Judge Tashima is saying, because the jury made this decision, no harm, no foul. It says plaintiff's failure to submit a claim is of no consequence as a result of the jury finding. In our case? Yes, that's what the district judge said in his order. In the Rule 50 order? And the reason that's wrong is because he relied on, that was Judge Voss, relied on Judge Broomfield's summary judgment. Okay, that's really where I'm getting to. Summary judgment. So this was submitted to the jury. You think the instruction was okay, but you think the verdict was wrong because there's no evidence to support it. But so you made a motion for judgment as a matter of law on that claim? Yes, we made a motion for JMOL saying you can't fire somebody. And on that ruling, Judge Voss sort of, you know, went circular and relied on Judge Broomfield. He said, I'm bound by what Judge Broomfield found, and they both were wrongly focusing on the supervisor's personal animosity when that is not the correct motivation that they're talking about in course and scope. The only thing I'm getting at is whether you preserved your error, but you did make a JMOL. We made JMOL motions. We made it after a plaintiff closed. We made it at the end of the trial, and we made the summary judgment motion prior. I don't know how we could have preserved it any better than that. I'd like to move. I guess we better talk about the other portion of your claim, huh? Yes. Real quickly. Oh, and the reason the case should never have gone to the jury is because she was acting in the course and scope. No notice of claim was filed. It should have been granted summary judgment before we ever got there. I'd like to move quickly on to the intentional interference claim against Ms. Capps only. There's three reasons why she should have gotten summary judgment on this issue as well. The first is she, in firing her employee, was the employer. The issue that you ask when you're talking about intentional interference of a supervisor is was the act the act of the employer? And if so, the employer can't interfere with its own contract. And here you cannot act other than as the employer when you're firing an employee. You can't walk down the street as a private citizen and say, I fire you, I fire you, I fire you. You have to be acting as the employer. It goes part and parcel a bit with the course and scope issue, but you can't fire an employee unless you are the employer. So she can't have interfered with her own contract. Second, again, no notice of claim was filed, as we argued before, and therefore the case should never have gotten to the jury. And third, as a matter of law, you need one of the elements of intentional interference is improper conduct. That was what Wagenseller said. How could her firing have been improper when the administrative judge found just cause? She appealed her. Well, but the jury is not bound by what the administrative law judge found. She should have gotten some re-judgment. It should never have gotten to the jury because, as a matter of law, she was fired for just cause. She didn't appeal it. But the jury, I think, obviously concluded she was acting out of personal spite, right? Well, that's correct, but A. Conclusion, so. But I don't know how they could have gotten there, how you even get to the jury, when her firing was for just cause, which means there had to have been no improper conduct. I don't care. No preclusion or estoppel on that. Well, I think it's a matter of law. It's determined as a matter of law. If the firing was for just cause, it can't be improper. Otherwise, you have. That's sort of like an issue of preclusion or race judicata argument. Well, it's kind of like that, but it's not really. Otherwise, if you have a firing for just cause, you cannot have a claim against the employer. There's no wrongful termination claim. Because it's just cause. And yet, under plaintiff's view or under the district court's view, you can have a claim against the supervisor for wrongful interference with employment contract. The plaintiff's rights haven't been violated. She was terminated for just cause. How can you have an intentional interference with her rights? Did you raise this question, the question on, you know, the administrative law judge's decision should have, I don't know, a preclusive, but some kind of effect? Yes. Did the jury know about that ruling? We argued it to the judge, Your Honor. But did the jury know about it? The I believe it was brought out that that it was found for just cause and that it wasn't appealed. It wasn't extensively gone into because I don't think the judge wanted to influence. That's the reason the judge didn't find it binding, because because it didn't go go up to judicial review or something. It didn't. It didn't go. She didn't appeal it. But that's the employee's choice. That's the employee's choice. And she decided not to do that. Now, so I don't know how you can ever have a wrongful interference when the when it was for just cause. I have 30 seconds. Reserve your remaining time. I'll reserve my remaining time. The plaintiff has a cross appeal that I'd like to address in the 30 seconds that I have left on rebuttal. Oh, yeah. Yeah. Yeah. Yeah. You're right. Good morning, Your Honor. Good morning. My name is the Mundo Robina and I represent the appellee cross appellant core of Madrid in this matter. I'd like to address the course and scope issue right off the bat. I'd like to note that the appellant notes in her opening brief that the Arizona Supreme Court in Shalik established the standards for course and scope. In Shalik, the Supreme Court adopted the restatement of agency approach. Under the restatement, conduct is within the course and scope if it is three factors. If it is the kind that the employees employed to perform occurs substantially within time and space limits. And the third one is the one that's important here. If it's actuated at least in part to serve a purpose to by purpose to serve the employer. What case you're depending on for that? Well, Shalik established that the restatement of agency applies. And within the Shalik decision and within the restatement, these three factors appear. Also, there's some court of appeals opinion that came out later. One is Dubey. The counsel was just referring to that that states this, this, these factors with the slight reformulation of the third one. And also the McLeod case that came out just prior to the Dubey case. The Supreme Court also noticed in or noted in the Shalik case that conduct while not authorized can be incidental to that authorized if certain factors apply. And it went through the factors and weighed those factors versus the factors in that particular case. It determined that course and scope is a jury issue. Subsequent cases have also determined that course and scope is a jury issue, including the Dubey case. In Dubey. But every jury issue, though, is subject to a directed verdict or JMOL, right? Yes, Your Honor. Or summary judgment. It is, Your Honor. And that's what happened in the Dubey case, is that the court found that the plaintiff or the appellant in that case claimed that his advisor had interfered with his ability to get his Ph.D. and to go on in his employment. And the material facts were undisputed. And the court noted that in the material facts, if you looked at all of them, all of them were in response. These were all correspondence, e-mails and communications that the advisor made to other university officials. And the court noted that because those communications were in response to requests from other university officials, his actions, even if they had some private motivation, were at least partially motivated to serve a purpose for the employer. All of them, all of them, all but one that was not relevant to the case were that way. And, therefore, in that case, there were no issues of fact to be decided. That is completely different from what happened in our case. In our case, the jury could and did decide that Ms. Capps, for purely private motive, having nothing to do with her purpose to serve the employer, took various actions to do. It is hard to, in theory, understand why, regardless of her motivation, it's not within the course and scope of her employment to fire somebody who works for her. She's in charge of the office. She has the authority to hire and fire, right? Yes, Your Honor. How could it not be within the scope? Because that's not the end of the inquiry. Those three restatement factors include whether it's for purpose. It's actuated in part to serve the employer. Right. She's running her office. How could it not be under this circumstance, given that the employment action is to fire her? How could that not be actuated in part? That issue, the issue of because it was in, she was working, really comes under the first element, which is the kind that the employee was employed to perform. If that were also to come under the third element, it would make it superfluous. This was a purpose to serve the employer, and the employer wants to manage the office. That isn't different to say, and I want to do it in harmony. Well, let me give you another example. It came out in a different case that just came out also within a month or so of Dubay. Go ahead. You're talking about Dubay now? Well, I wanted to give you another example of a case that came out. McCloud v. State came out about a month before Dubay came out. And in that case, the issue was a Department of Public Safety officer driving his vehicle, crashed into the back of another vehicle. He was authorized to drive the vehicle. He couldn't drive the vehicle without authorization, and yet the court found that there was a jury issue as to whether or not it was done within the course and scope of his employment because he was going to lunch at the time. So it's not... That's a classic. That's the classic frolic and detour. I'm supposed to be delivering the stuff, but I'm actually at the shopping center. I'm at lunch. I'm not at work. I mean, those are classic scope of employment issues.  The problem with this act that the defendant did is an act that can only be done in the course and scope, unless it's an ultraviolence act by somebody who doesn't have the authority, which is not the case here. It can only be done by someone, you know, with the authority to hire and fire. Well, Your Honor, but what the court, the district court... I say to you, well, you know, you're fired from your law firm. You can say, well, you know, I don't have the authority, so you don't have to listen to me. But if whoever is in charge of the law firm says that, it has to be within the course and scope, doesn't it? Your Honor, if you do it for purely private motives with no intention to do it as part of... You see, those restatement factors and the purely private motive, you know, factors go to cases, at least according to your opponent, where, you know, the acts could be or could be or are not authorized, like, you know, driving a car. Maybe you're, you know, maybe you're authorized to drive the car to make a delivery to somebody, but you're not authorized to, you know, make a right turn to, you know, a lefty's bar and have a drink. I mean, those are the cases you're talking about, right? And you're not authorized to sexually harass people. You're not authorized to sexually harass people, but the court determined that that's... the court determined that that's a fact issue. All of these issues, every single case that's come out on course and scope has said that it's a fact issue, including Crum. There's another example that the Southern Union versus... It's a Southern Union case that this Court decided in which, based on Crum, this was a case in which... It's a 2005 case in which an Arizona Corporation Commission member in his, you know, within works basically against a deal that was being made by going to Corporation Commission members from other states, and he did it ostensibly for personal purposes, and yet the court said, based on Crum, that he was entitled to a jury to determine whether or not he was acting within the course and scope of employment. In that case, the court said, the court also said, now, that could not have been done outside the course and scope of his employment, I mean, or outside the authorization of his job, but the court said it was a jury question. Interestingly, the court also said that it was a harmless error that they had not given a jury instruction, and that because, as the jury had determined by virtue of a big damages award that it gave, they didn't believe that the reasons that he did it were to serve the master, and the court likened it to a judge who accepts a bribe and said, basically, he says, outside the confines of the bench, but yet are you doing that to serve, you know, within the course and scope of your job as a judge, and the court implied that, no, you're not doing that. No, I mean, to me, that's similar to, you're talking about those judicial immunity cases like White out of the Supreme Court where they say, you know, it's one thing to sit up here and give a ruling in the scope of our employment, but we can't engage in employment discrimination and sexual harassment, because that wouldn't be, in effect, part of our immunity, part of our scope. So it seems like it kind of deals back to the nature of the act. Well, Your Honor, for instance, if a judge for personal gain decided to accept a bribe and ruled in a case based on the bribe, the judge is doing it in her official capacity. However, she's not doing it for a purpose to serve the role in which she plays. And there's the distinction. The other thing is that – Counsel? Yes, sir. Judge Krupa, I have a question. Could you at some point address the same question I asked earlier? What do you think are pros and cons of certifying the scope of employment question? And I hope your answer isn't just, again, don't certify it if I would win, but certify it if I would lose. You know, do you have any substantive comment on it? Your Honor, I think this issue has basically been decided. There have been five cases that have looked at this issue. The Supreme Court case, Dubay, McLeod. Higgins is another case that just recently happened. By the way, do you have a citation to McLeod? I don't know if I have it. Is that the new one? It's a fairly new one, right? I don't think I have that. I'll tell you what you can do. Why don't you wait, and after the argument you can just fill in one of these pieces of paper and give it to the clerk, and then we'll have it. That's a good idea. Then you can use your time for argument. Let me explain one more item. So I think these cases have been decided, Your Honor, and for that reason I don't think it's necessary. I wanted to address one thing that counsel said that I think was incorrect. Judge Voss did initially decide that Judge Broomfield's decision was the law of the case, but later he recognized that error and said, regardless, it's not the law of the case, but I still agree with it based on the evidence at trial. We see that it's even stronger than it was in the summary judgment record, that this was for purely private motive, even though she was acting as the county attorney when she did it. Now, let me address one other thing that's a slightly similar issue, and it's the wagon seller issue. If counsel is correct, then no supervisor who terminates an employee could ever be acting, could ever be sued for intentional interference with employment relationship, and wagon seller said that you cannot, that that's not the case. Wagon seller said that if a supervisor acts as a third party, acts as a third party, which in this case would be a supervisor acting outside the course and scope of employment, then that supervisor can be sued for intentional interference with employment relationship. And in that case, counsel in their appellate briefs have said, well, the real cases that apply are the Mintz case, which came out later, a court of appeals case, and Payne v. Penzoil. Those cases do not. Well, what she said was wagon seller is not a, you know, scope of employment case. Well, but her reasoning would wipe out the decision in wagon seller on intentional interference. But on the other hand, so your reasoning would, you know, sort of, you know, the employer would always have a defense to like, you know, all kinds of, you know, employment discrimination cases. Well, you know, my supervisor or somebody fired me because of my race. And the employer says, well, that's not within the scope of employment. I'm not I'm not responsible. Let me let me address that. That didn't seem right to me that you could you could raise that defense and all these employment discrimination case. A case just came down also within the last few months in in Arizona called Higgins versus Osman, which is a case in which a supervisor went to the employee's house, found her with another man, assaulted her and terminated her on the spot. And she sued for wrongful. You mean the way Schwarzenegger would. Exactly. Not exactly, but they terminated her employment. And the court in that case looked at at the restatement factors to determine whether or not that act was an act that was incidental to to to the supervisor's employment. Look at the restatement or the assault. The termination was whether whether or not to terminate because the jury decided that it was within the course and scope of employment. What was the supervisor's termination? Yes, sir. The jury decided it was within the course and scope of employment. The the the employer argued that it was outside the course and scope of employment because of the nature of the act. The court upheld the jury decision looking at the factors, whether or not they incidental incidental factors in the restatement. Let me point out one thing when you're reviewing this debate case. The debate case talks about incidental to employment, but it does it in a way that's a little bit different than both the shallot case and the Higgins case. And it's a little confusing. The debate case uses incidental to employment, meaning that because it noted five different times that because the employer or I'm sorry, the supervisor decide was responding to communications from from other university officials or requests for communications from other university officials, that he was then acting incidentally into his employment. And and therefore it was at least in part motivated to serve a purpose of the super. That language, though, is very different. Then then then the way it was decided, they don't explain in Dubai how they come up with the incidental incidental to employment. This is going to spend a couple of minutes on your cross. Yes, sir. Let me let me do that. The district court did err on summary judgment with regard to Miss Madrid's retaliation claim. She filed a it's undisputed that she filed some EEOC charges in the past that subsequent to her termination. About a year later, she she was basically offered a job with the county attorney's office and as a legal secretary, the legal secretary and that the county manager had concerns that because she had filed EEOC charges in the past, she might do so again. The question was whether the county manager did not did talk with the board of supervisors. They claimed that that didn't have bearing on their decision. However, here's how it could have. And here's why. This is a fact question with the county manager. The board of supervisors instructed the county manager to go have an investigation done pursuant to their policy. He did not do that. Instead, what he did was he hired an attorney to determine whether or not they had to have an investigation done. And and and he instructed the attorney that he had concerns about the performance issues with the with Miss Madrid. And then he gave the the attorney the decision from the from the administrative appeal. And and basically a jury could find that the way the manner in which he did that was designed basically to have her come up with a negative conclusion. She gave her conclusions that the county did not have to spend the money to conduct an investigation every time an employee wanted to be rehired to the board of supervisors who looked at nothing but her her opinion. They did not read the county attorney's letter stating the specific facts that he believed were relevant to hiring her. They only looked at her opinion. Much different than in other cases in which the or the decision makers did their own independent. Which evidence of retaliation is that one inference that comes from the kind of report the county manager asked for? Is that all you have? Not just that, Your Honor. The board of supervisors specifically instructed him to have an investigation done. He didn't do it. He knew that he was supposed to do it. Didn't do it. Asked her to come up with a report. But he did. That's what he did. But the decision was made by the board. It's a cat's paw theory, Your Honor. In other words, he had retaliatory. There's there's he had there's plenty of direct evidence that he had retaliatory intent. They may not have, but he did. And he influenced the report that went to them upon which they made their decision. Counsel, counsel. My question on this is, does your theory depend on concluding there's an issue of fact as to whether the lawyer acted in bad faith so that the manager manipulated the lawyer to give an opinion in bad faith that they could do what they did and that manipulated the board? Not necessarily that the lawyer acted in bad faith, Your Honor. This was a defense lawyer, a lawyer that that works primarily for the county insurance pools and doing defense work. And I believe that the jury could easily find that the manner in which the county manager communicated to that lawyer basically telegraphed to her the answer that he wanted her to have. We have a bad influence. Counsel, isn't that saying that the lawyer's opinion isn't an independent opinion then that the lawyer is writing to satisfy this? What do you call telegraphed result? Your Honor. Your Honor, to answer that question, the lawyer wrote in her report that she was not asked to do an investigation. She was asked to to to write an opinion as to whether or not every time an employee who had been terminated wanted to return. The county had to go to the expense and to to to do that. So she did not get what this board of supervisors directed the county manager to do. I understand that completely. But but still, if if her opinion is like an honest opinion that they don't have to go to that expense, then why can't the board rely on it? Your Honor, the the this case is one similar to Bergen, in which the there was a person who had a bad intention. He did not telegraph the bad intention to the supervisor who ultimately made the decision, the adverse decision. But the manner in which he in which he communicated to the supervisor, basically it it it made the the the ends that he wanted come through. But it's sort of a double cat's paw that the managers manipulating the lawyer was then manipulating the board. The board did no investigation. Well, did the manager make an explicit recommendation to the board? I'm sorry. Did the manager make an explicit recommendation to the board on whether or not to hire this woman? He spoke with the board members on his own and told them that he had concerns about her sexual harassment complaints in the past. All of them knew about the sexual harassment complaints in the past and two of them. And they also knew of the managers that the manager was concerned about that. He told him that he was concerned means that he was concerned about liability issues. So he communicated that to the board. Yes, he did, Your Honor. Thank you. Thank you. And then the board members said they were relying on the lawyer, though, right? That they only relied upon the opinion of the lawyer because that's all they had to go on. Right. I'm not arguing that they did it. I'm arguing that that they that he got his way by by manipulating the lawyer and that they basically either, you know, chose to to accept the lawyer's opinion because they believe they had nothing else to go on. That doesn't result in a liability if he had a a discriminatory motive or retaliatory motive. Thank you. Thank you. We have a minute for rebuttal. Thank you, Your Honor. First, personal personal motivation goes to the issue of wrongful discharge, not course and scope. Otherwise, employers would never be liable for wrongful discharge because the wrongful termination would always be outside the course and scope. And that's just not the law. Second, in Wagon Seller, the tortious interference case, the supervisor didn't fire the employee. She had no authority to do that. She was a third party who could induce a breach of the contract. Third, in Higgins, the case that counsel just mentioned, the employer argued that because the sexual assault was outside the course and scope as a matter of law, therefore, the termination, which occurred during the sexual assault or the assault, had to be outside the course and scope. The court said, no, there could be a fact issue on that. No one had argued that it was an issue of law. Fourth, on the cross appeal, on the retaliation issue, the county met its burden of showing a nondiscriminatory reason for not hiring her. Judge Broomfield already took into account the county manager's influence on the board by saying that the plaintiff made out a prima facie case of discrimination. That he already took that into account. What the county manager did after that was hire an outside independent counsel to give an opinion as to whether or not there was just cause, clear justification, they had to have clear justification and a background check in order to hire a person, rehire someone who had been terminated for just cause. And the opinion, the independent counsel concluded after taking all of the evidence into account that there was no clear justification, so there was no reason to do a background check because you need both. There is no clear, direct, substantial evidence, and that's what you need to have, clear, direct and substantial evidence that the county manager influenced the opinion of the independent lawyer. Thank you.
judges: Tashima, McKeown, Gould